UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO.  5:08-154-KKC

CORBY BURUS,                                                              PLAINTIFF

v.                          **OPINION AND ORDER**

THE WELLPOINT COMPANIES, INC.
*d/b/a Anthem Blue Cross and Blue Shield*,                    DEFENDANT

**\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\***

This matter is before the Court on the Motion for Summary Judgment (DE 51) filed by the

Defendant.  For the following reasons, the motion will be GRANTED.

> **I.      FACTS.**

> **A.     The Complaint.**

In her Complaint, the Plaintiff alleges that she was hired by the Defendant  in October 2001

as a Specialty Sales Manager ("SSM") in the Defendant's Lexington office.  The Defendant provides

health and other types of insurance plans to companies and employees.

The Plaintiff further alleges that, in July 2004, her husband was diagnosed with an incurable

medical condition which prevented him from working and required that he use a wheelchair.  She

states, at about that time, she told her direct supervisor about her husband's condition.

She alleges that, in August 2005, she was demoted from the SSM position to the position of

Specialty Account Manager ("SAM") which was supposed to support the SSM.  She further alleges

that the Defendant hired a younger male to succeed her as SSM and that he was paid a higher salary.

She alleges that the Defendant "engaged in a course of conduct designed to discourage her

from continuing employment" with the Defendant.  This conduct included refusing to give her credit

towards sales goals; refusing to compensate her according to her plan of compensation; refusing to provide support; raising sales goals "to create an appearance of poor performance;" issuing verbal and written warnings to justify firing her; and tampering with her supervisor's positive evaluation of her.

She alleges that, in November 2006, the Defendant fired her after she told the Human Resources Department about the allegedly discriminatory actions of her managers. She alleges that she also spoke with the Human Resources Department about the possibility of taking leave under the Family and Medical Leave Act.

She alleges a young female was hired for her position "although the duties of that position were different than those of" the Plaintiff.

The Plaintiff asserts nine claims against the Defendant.

She asserts that the Defendant demoted and terminated her because of her husband's illness in violation of the "association provision" of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112(b)(4), which prohibits an employer from "denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

The Plaintiff further asserts that, in demoting and terminating her because of her husband's illness, the Defendant also violated the Kentucky Civil Rights Act ("KCRA"), KRS 344.040.

The Plaintiff also asserts that the Defendant unlawfully demoted and terminated her because of her age in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621, *et seq*. and because of her gender in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) ("Title VII").

The Plaintiff also asserts that the Defendant terminated her in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*.

The Plaintiff asserts three state law claims of wrongful discharge, intentional infliction of emotional distress, and breach of contract.

Finally, the Plaintiff asserts a "retaliation" claim against the Defendant, asserting that she was fired for engaging in the "protected activity" of reporting to management statements by her supervisor Eric Neuville about her husband and the protected activity of reporting to the Defendant's Human Resources Department the "conduct of her immediate supervisor and upper management."

**II.     ANALYSIS.**

**A.     Discrimination Claims (ADA, KCRA, Title VII, ADEA).**

**1)     Demotion Claim.**

The Defendant argues that the Plaintiff's claim that the Defendant unlawfully demoted her is untimely.  In a deferral state such as Kentucky, an administrative charge must be filed within 300 days of the date of the alleged discrimination.  29 U.S.C. § 626(d)(2)(ADEA); 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (ADA).

The Plaintiff asserts she was demoted in August 2005 but she did not file a charge with the Lexington-Fayette Urban County Human Rights Commission until March 9, 2007. (DE 52, Att. 21, Discrimination Charge).

In response, the Plaintiff does not argue that her claim for unlawful demotion is timely. Instead, she argues that she does not assert an unlawful demotion claim at all.  The Plaintiff argues that her claim is that she was subjected to a "hostile work environment" and that the demotion was

3

part of that environment and that the last act was the termination. (DE 54 at 9-10).

While an administrative charge of discrimination must be filed with 300 days of the "unlawful employment practice. . . [a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116-17 (2002). Thus, a hostile work environment claim just has to be filed within 300 days of one act contributing to the claim. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of hostile environment may be considered by the court." *Id.*

As an initial matter, because the Plaintiff denies that she even asserts a claim for unlawful demotion, to the extent that her Complaint can be read to assert such a claim, the claim will be dismissed.

As to whether the demotion can be considered as part of a hostile work environment claim, in *Morgan*, the Supreme Court stated that claims arising from "termination, failure to promote, denial of transfer, or refusal to hire" were "discrete acts." *Id.* at 114. Such discrete acts cannot be considered as part of a hostile work environment claim for purposes of determining the limitations period. Instead, the limitations period for discrete acts begins to run on the date the act occurred. *Id.* "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

In *Morgan*, the Court identified termination, failure to promote, denial of transfer, and refusal to hire as "discrete acts," noting they were to "easy to identify." *Id.* at 114. Demotion is also a discrete act, the date of which can be easily identified. *Roney v. Illinois Dept. of Transp.*, 474 F.3d

4

455, 460  (7th Cir. 2007); *Pegram v. Honeyweel, Inc.*, 361 F.3d 272, 280 (5th Cir. 2004).  Thus, it

cannot be aggregated with other acts as part of a hostile work environment claim.

 For all these reasons, any claim by the Plaintiff that she was demoted in violation of Title VII,

the ADA, or the ADEA will be dismissed.

 **2)**  **Hostile Work Environment Claim.**

 The next issue is whether the Court should allow the Plaintiff to assert a hostile work

environment claim.  She does not assert such a claim in her Complaint.  In her Complaint, as stated,

the Plaintiff asserts nine counts against the Defendant.  Among them are the Plaintiff's claims that

the Defendant engaged in "unlawful discrimination in demoting her" and "unlawful discrimination

in terminating her" under the ADA (Count I), the ADEA (Count III), and Title VII (Count IV).

However, she does not assert that she was subjected to a hostile work environment.

 More importantly, the Plaintiff did not assert a hostile work environment claim in her EEOC

charge. As a statutory prerequisite to filing a discrimination claim in federal court, the claimant must

explicitly file the claim in an EEOC charge or the claim must be "reasonably expected to grow out

of the EEOC charge."  *Jones v. City of Franklin*, 309 Fed. Appx. 938, 943 (6th Cir. 2009).

 In her EEOC charge, the Plaintiff checked the boxes on the form indicating her

discrimination claim was based on age, sex, and disability. She further stated that the discrimination

took place on November 9, 2006, which was the date of her termination. (DE 51, Att. 21).  She did

not check the box indicating that the discrimination was a "continuing action." Under "particulars,"

she stated, "[o]n or about November 9, 2006, I was terminated from my position as Senior Certified

Strategic Account Manager."

 The Sixth Circuit has recently stated that "[n]o decision in this circuit has held that EEOC

charges regarding discrete acts of discrimination are alone sufficient to put the EEOC on notice of a hostile-work-environment claim.  Several unpublished decisions of this court have in fact held to the contrary." *City of Franklin*, 309 Fed. Appx. at 943-44 (citing *Brown v. City of Cleveland*, 294 Fed. Appx. 226, 234-35 (6th Cir. 2008); *Scott v. Eastman Chem. Co.*, 275 Fed. Appx. 466, 475 (6th Cir. 2008)).

There is nothing in the EEOC charge in this case that would not have reasonably prompted the EEOC to investigate a hostile work environment claim.  Accordingly, any such claim by the Plaintiff will be dismissed for failure to exhaust her administrative remedies.

### 3)      Termination Claim under the ADEA and Title VII.

As for the Plaintiff's claim that she was unlawfully terminated in violation of the ADEA and Title VII, a plaintiff can establish a prima facie case of discrimination by introducing either credible, direct evidence of discriminatory intent or by circumstantial evidence through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 342, 343 n.3, 348-49 (6th Cir. 1997); *See Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009)(finding that *McDonnell Douglas* framework should still be used to analyze ADEA claims based on circumstantial evidence even after *Gross v. FBI Financial Services, Inc.*, 129 S.Ct. 2343 (2009)).

Under *McDonnell Douglas* – the circumstantial evidence approach – the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  To establish a prima facie case, the plaintiff must show that (1) she is a member of a protected class; (2) that she was qualified for the job; (3) that she suffered an adverse employment decision; and (4) that the job was given to a person outside the protected class or that she was treated

6

differently than a similarly situated, non-protected employee. *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 501-02 (6th Cir. 2007).

Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once a plaintiff proves her prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802-03.

If the defendant meets its burden, the burden shifts back to the plaintiff to show that the reason proffered by the defendant was not its true reason but merely a pretext for discrimination. *Id.* at 804-05. A plaintiff can show pretext "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. Once the defendant meets its burden, the *McDonnell Douglas* framework is no longer relevant. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510 (1993). The trier of fact simply proceeds to decide the ultimate question: whether the plaintiff has proved that the defendant intentionally discriminated against him. *Id.* at 511.

### a)   Direct Evidence of Discriminatory Termination.

The *McDonnell Douglas* framework applies when the plaintiff can produce only circumstantial evidence of discrimination. "If a plaintiff can produce direct evidence of discrimination then the [McDonnell Douglas] paradigm is of no consequence." *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 349 (6th Cir. 1997). "Where a plaintiff presents direct evidence of discriminatory intent in connection with a challenged employment action, 'the burden of both

7

production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)(quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000).

      Direct evidence is evidence that proves the existence of a fact without any inferences. *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 548 (6th Cir.2004). "Direct evidence of discrimination is that 'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003) (quoting *Jacklyn v. Schering-Plough Health Care Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson*, 319 F.3d at 865.

      "For example, a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen*, 229 F.3d at 563. However, "isolated and ambiguous statements...are too abstract, in addition to being irrelevant and prejudicial, to support a finding of [ ] discrimination." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 380 (6th Cir.1993) (quoting *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989)). *See also, Taylor v. Board of Educ. of Memphis City Schools*, 240 Fed. Appx. 717, 720 (6th Cir. 2007)(finding that statement by school administrator that she hired a white applicant "to maintain racial balance" constitutes direct evidence of discrimination); *Needy v. Louisville/Jefferson County Metro Govt.*, 2007 WL

8

1651985, at * 2 (W.D. Ky. 2007)(statement by Fire Department major that she would have to hire females as dispatchers because there were not enough bedrooms for males constitutes direct evidence of a discriminatory motive).

The Plaintiff contends she has submitted direct evidence that she was fired because of her gender and age. This evidence consists of the deposition testimony of Ron Hoke, a former co-worker of the Plaintiff.  Hoke testified that Eric Neuville, the Plaintiff's supervisor while she was an SSM, told Hoke that the "market would be better served by a 'young suit.'"  (DE 73, Hoke Dep. at 54-55). When asked what a "young suit" was, Hoke replied "I took it to be a young guy, I mean, that would be my interpretation, I guess."  Hoke testified that Neuville made this statement in the fall of 2004. (DE 73, Hoke Dep. at 55).

The Court does not find this statement to constitute direct evidence that the Plaintiff was fired because of her age or gender.  The statement is isolated. Neuville made this single statement approximately two years before the Plaintiff was fired.  Further, the statement is ambiguous.  Hoke testified that he thought that a "young suit" was a young male but the dictionary defines "suit" as slang for "business executive."  Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary.  Thus, the term does not necessarily refer to males.

Further, it is not clear what Neuville meant by stating that the market would be better served by a "young suit."  In order to constitute direct evidence that the Plaintiff was fired because of her age or gender, the Court would have to find the statement unambiguously meant that the Defendant should fire the Plaintiff and replace her with a younger and/or male employee.  The Court does not find that the statement lends itself to only this interpretation.

Finally, the statement was not made in connection with the Plaintiff's termination. Again,

the statement was made nearly two years before the Plaintiff's termination. Further, Neuville did not make the decision to fire the Plaintiff.  Neuville was not the Plaintiff's supervisor at the time she was fired.  At that time, her supervisor was Brian Yahne and Yahne testified that he made the decision to terminate her.  In his affidavit, Yahne states that he consulted with Human Resources Manager Larry Morrison and Yahne's supervisor Kevin Stutler prior to terminating the Plaintiff.

Neuville testified that Yahne came to him "at the very end" because he needed a "final sign off" on the termination and Stutler was on vacation.  (DE 76 at 80).  Neuville testified that he signed off on the termination.  Even if Neuville did "sign off" on the termination, there is no evidence that he was a decisionmaker in the Plaintiff's termination.

The Plaintiff asserts that Neuville urged Yahne's predecessor, John Edwards, to fire the Plaintiff.  In the portion of Edwards' deposition testimony cited by the Plaintiff as support for this proposition, Edwards states that Neuville told him that he wanted to "get rid of Corby."  However, this is not evidence that Neuville was a decisionmaker in the Plaintiff's termination, only that Neuville wanted the Plaintiff to be fired. Further, these communications occurred between Neuville and Edwards and there is no dispute that Edwards had no role in the Plaintiff's termination.

Accordingly, Neuville's statement made nearly two years before the Plaintiff's termination is not direct evidence that she was fired because of her age or gender.  Thus, the Plaintiff will need to make her case with circumstantial evidence of discrimination under the *McDonnell-Douglas* framework.

**b)      The McDonnell-Douglas Framework.**

**i)      Prima Facie Case of Age and Gender Discrimination.**

Again, to establish a circumstantial prima facie case of age and gender discrimination under

*McDonnell-Douglas*, the plaintiff must show that (1) she is a member of a protected class; (2) that she was qualified for the job; (3) that she suffered an adverse employment decision; and (4) that the job was given to a person outside the protected class or that she was treated differently than a similarly situated, non-protected employee. *Abdulhour v. Campbell Soup Supply Co.*, 502 f.3D 496, 501-02 (6th Cir. 2007).

The Defendant does not dispute that the Plaintiff meets the first three requirements of the prima facie case for her Title VII and ADEA claims. In its Motion for Summary Judgment, the Defendant does dispute, however, whether she meets the fourth requirement: that she was replaced by someone outside of the protected class or that she was treated differently than a similarly situated, non-protected employee.

As to the Plaintiff's claim that she was terminated because of her age, the Plaintiff submits her own affidavit stating that her successor was in her "late 20s."  However, this is not a statement based on the Plaintiff's own personal knowledge as required under Rule 56(e)(1) of the Federal Rules of Civil Procedure.  The Plaintiff makes clear in her deposition testimony that she has no personal knowledge of her successor's age. Further, the Court has been unable to locate any evidence in the record of the age of the Plaintiff's successor.  The Plaintiff has produced no evidence that she was treated differently than similarly situated younger employees.  Accordingly, the Plaintiff has failed to establish a prima facie case of age discrimination.

As to the Plaintiff's claim that she was terminated because of her gender, she was replaced by another female. Accordingly, the Plaintiff must show that the Defendant terminated her but did not terminate males who were similarly situated.  The Plaintiff has not submitted any evidence indicating that similarly situated males were not terminated.  Accordingly, the Plaintiff has failed to

11

establish a prima facie case of gender discrimination.

Further, the Plaintiff has presented no evidence that the Defendant's proffered reason for terminating her was a pretext for age or gender discrimination.

### ii)    The Defendant's Proffered Reason for Terminating the Plaintiff.

The Defendant asserts it terminated the Plaintiff from her position as a SAM because she was "untimely" and "woefully unresponsive to both internal and external customers."  (DE 70 at 4).

The Defendant explains that it is the nation's largest health benefits company and that it has a number of divisions including the specialty and medical divisions.  Specialty sells and manages life insurance and insurance for long-term disability, short-term disability, dental, vision and Employee Assistance Programs.  The medical division sells and manages medical and group health insurance products.

The Defendant explains that its corporate headquarters formulates the sales goals for each division and communicates them to each division's president.  The Defendant explains that specialty and medical each have their own president but they are "closely tied because most of specialty's new sales are referred to it by medical."  Accordingly, "specialty salespeople must develop relationships and maintain credibility with their medical sales counterparts." (DE 52, Mem. on Summ. J. at 4).

The Plaintiff was hired by the Defendant in October 2001 to be one of two SSMs by Eric Neuville, the Defendant's National Sales Director of Specialty Products. She was over 40 at the time she was hired.  She had sales goals for three products:  Life & Disability, Vision, and Dental.  In 2003, she met the sales goals for all three products and received a 4 on a scale of 1 to 5 on her 2003 performance review.

The Plaintiff asserts that she informed Neuville of her husband's condition in 2004.  The

Defendant asserts that the Plaintiff's job performance worsened in 2004 and that she did not meet a single sales goal that year.  Thus, in her overall job performance evaluation for 2004, Neuville rated her a  2 on a scale of 1 to 5.

 The Defendant asserts that she also failed to meet her "administrative goals" for that year. Neuville wrote on her 2004 performance review that her monthly reports were late; she failed to "take ownership of her work;" she "lacked sufficient business and industry knowledge;" she received the lowest grade in the department's disability training session; and she seemed "unpolished" and "unprepared" in a speech she delivered to the specialty sales department.

Neuville states in an affidavit that he determined she could not succeed as a SSM and, thus, in August 2005, he "transferred" her to the newly created SAM position.  The Plaintiff contends this was a demotion.  The Court need not resolve this issue because it has determined that the Plaintiff's claim for unlawful demotion must be dismissed.

The SAM's job duties include managing the specialty department's existing business and conducting open enrollment meetings for new clients. Brian Yahne, who became the SAMs' Manager in February 2006, explains in an affidavit, that SAMs work with the medical team to renew specialty coverages, coordinate the implementation of new specialty coverages, timely resolve escalated specialty service issues, and serve as the specialty expert on group enrollments of specialty products.

In his affidavit, Yahne states that he instituted a number of rule policies and procedures, one of which was a requirement that all SAMs respond to business-related e-mails within 24 hours.  He also required that all SAMs submit their expense reports within one week of the date the expense was incurred, despite the fact that the Defendant's corporate policy just required expenses to be

submitted within a month.  He states that he imposed the tighter deadline because of the impact the SAMs' business expenses were having on the specialty division's ability to budget and monitor cash flow.

Yahne states that in February 2006, the Plaintiff and ten other SAMs reported directly to him. Yahne states that, in June 2006,  Andrew Cassis, who replaced the Plaintiff as an SSM, complained to Yahne about the Plaintiff's performance as an SAM.  Cassis told Yahne that the Plaintiff had waited eight days before responding to an important sales lead from an outside broker.

Yahne states that, in August 2006, Cassis again called to complain about the Plaintiff, stating that she was unprepared at an important enrollment meeting.  Yahne states he later got a phone call from his regional vice president's office complaining that the Plaintiff had failed to forward a list of clients to the vice president's office as requested. Yahne states he spoke to the Plaintiff and set a deadline for her to respond to the request but that the Plaintiff never responded.

Yahne states that Cassis later complained to Yahne about how the Plaintiff spoke to a vendor. Yahne also states that the Plaintiff was 15 minutes late for a conference call with the Defendant's Vice President of underwriting.

Yahne states that, after consulting with the Defendant's Human Resources Manager Larry Morrison, he gave the Plaintiff a Verbal Warning on August 9, 2006. A few days later, he spoke with the Plaintiff because she had waited three months before submitting her expenses.  Yahne states that the Plaintiff was the only SAM who failed to comply with the expense report policy.

Yahne states he gave the Plaintiff a Written Warning on September 28, 2006.  Yahne states that, by November 2006, he realized that the Plaintiff "was not improving her timeliness or responsiveness."  He states that she refused to accept responsibility for her actions and seemed more

interested in challenging his view of what was important to the SAM job.

On November 3, 2006, he delivered a memorandum to Human Resources Manager Morrison in which he summarized his reasons for recommending that the Plaintiff be terminated. He states that the first 60 days after the verbal warning, the Plaintiff continued to be late to meetings and was "not conforming to policies." As specific examples, Yahne states that the Plaintiff was 15 minutes late for a September 11, 2006 conference call with the Kentucky Bankers Association and that the call could not start until the Plaintiff called in.

Yahne also mentioned the 3-month late expense report turned in by the Plaintiff after the verbal warning. Yahne stated that, after the written warning, he requested that his staff submit expenses reports for the month by September 29, 2006. He stated that he allowed the Plaintiff one extra day but that she did not submit it until the end of the day on October 2 without supporting documentation.

Yahne also stated that, after the written warning, the Plaintiff was 30 minutes late to an off-site meeting; used her blackberry during a meeting; and was not abiding by her agreement to be in Louisville 4 days a week during the week of October 2 to 6.

On November 6, 2007, Yahne fired the Plaintiff. He states he told her the reason was that she had failed to correct the "timeliness and responsiveness issues" he had brought to her attention.

**iii)    Evidence of Pretext.**

Because the Defendant has articulated a legitimate, non-discriminatory reason for terminating the Plaintiff, the next issue is whether the Plaintiff has produced sufficient evidence that the Defendant's stated reason for firing her was simply a pretext for discrimination. There are three ways in which a plaintiff can demonstrate pretext: first, by showing that the employer's stated reason

for terminating the employee has no basis in fact; second, by showing that the reason offered for terminating the employee was not the actual reason; and third, by showing that the reason was insufficient to explain the employer's action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)(citation and quotation omitted).

The first type of pretext showing consists of evidence that the proffered reason is factually false, i.e., that the facts alleged by the employer never happened. *Id.* The Plaintiff does not dispute that the facts alleged by the Defendant occurred. In her response brief, she appears to argue that Yahne did not, in fact, institute a policy requiring that expense reports be filed weekly as he asserts in his affidavit. (DE 54 at 41). However, she points to no evidence contradicting Yahne's statement in his affidavit.

The Plaintiff points to the deposition testimony of her successor as SSM, Andrew Cassis, who testified that the Plaintiff "knew the market well" and they were together an "effective team." However, Cassis also testified that "more business things kept on falling through the cracks. . . following up or responsiveness" which "absolutely affects business." The Plaintiff has pointed to nothing in Cassis's deposition testimony or any other evidence that indicates that the facts alleged by the Defendant regarding the reason for her termination are false.

Accordingly, this first type of pretext showing is inapplicable here.

With the second type of pretext showing, the plaintiff admits the factual basis of the employer's proffered reason and admits that the proffered reason *could* motivate the employer to act as he did. *Id.* The plaintiff charges however that discrimination was more likely the reason the employer acted the way he did. With this type of pretext showing, the plaintiff is required to produce additional evidence of discrimination beyond his prima facie evidence. *Id* The Plaintiff has

16

produced no evidence of age or gender discrimination beyond her prima facie evidence other than Neuville's statement regarding "young suits."

The Court has already explained that this statement does not constitute evidence that the Plaintiff was terminated because of her age or gender.  The statement was not made in connection with the Plaintiff's termination. It was made nearly two years before the Plaintiff's termination. Further,  Neuville did not make the decision to fire the Plaintiff.

The third type of pretext showing – evidence that the proffered reason was insufficient to motivate the discharge – ordinarily consists of evidence that the proffered reason did not cause the employer to undertake the same employment action with respect to employees not in the protected class. This showing consists of evidence that employees who are not in the protected class were not subjected to the same treatment even though they engaged in substantially identical conduct. *Manzer*, 29 F.3d at 1084.  The Plaintiff has produced no evidence that male employees or younger employees who engaged in substantially identical conduct were not fired.

Accordingly, the Plaintiff's sex and age discrimination claims must be dismissed.

**4)      Associational Discrimination under the ADA.**

As to the Plaintiff's claim that she was unlawfully terminated because of her husband's disability, the prima facie case for this claim is slightly different than for the sex and age discrimination claims. A district court in this circuit recently noted the following with regard to disability association claims:

> Claims are only infrequently brought under 42 U.S.C. § 12112(b)(4) and there are few decisions that have been asked to apply it. Case law in the Sixth Circuit addressing this issue is particularly limited. However, in *Overley v. Covenant Transport, Inc.*,[178 Fed. Appx. 488 (6th Cir. 2006)], an unreported decision from the Sixth Circuit, the Court adopted the four-part test developed by the Tenth Circuit in

17

*Den Hartog v. Wasatch Academy*, 129 F.3d 1076 (10th Cir.1997) for establishing a prima facie case of disability discrimination in violation of the association provision. In *Den Hartog*, the Tenth Circuit held that a plaintiff can establish a prima facie case of association discrimination under 42 U.S.C. § 12112(b)(4) by showing that:

(1)     he was qualified for the position at the time of the adverse employment action;

(2)     he was subjected to an adverse employment action;

(3)     he was known by his employer to have a relative or associate with a disability; and

(4)     the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the employer's decision.

*Geer v. United Precast, Inc.*, 2007 WL 462720 at * 9 (S.D. Ohio 2007) (citing *Overly*, 178 Fed. Appx. at 493).  *See also Larimer v. IBM Corp.*, 370 F.3d 698, 701-02 (7th Cir.2004) and *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230-31 (11th Cir.1999).

The Defendants do not dispute that the Plaintiff meets the first three requirements.  However, there is an issue as to whether her termination occurred under circumstances that raise a reasonable inference that her husband's disability was a determining factor in the decision.  The Plaintiff told Neuville, who was her supervisor at the time,  about her husband's illness in July 2004.  She was not terminated until November 2006, nearly two and a half years later.  That gap between events is too great to raise a reasonable inference of discrimination based on timing.

The Plaintiff states that there are other circumstances that give rise to a reasonable inference that she was terminated because of her husband's disability.  She states that her former supervisor, Neuville, regularly expressed concern to her that her husband's situation would keep her from doing her job; that her co-workers noticed that she fell "out of favor" with Neuville after she told him about

18

her husband's illness; and that he stated afterward that he made a mistake in hiring her.  (DE 54 at 17; referring to DE 54 at 16).

Again, however, Neuville did not make the decision to terminate the Plaintiff.  The Plaintiff asserts that Neuville urged Yahne's predecessor, John Edwards, to fire the Plaintiff.  However, Edwards explains in his deposition testimony that the reason Neuville wanted to fire the Plaintiff was because "[h]e didn't feel that she was working hard enough to justify the position that she was in." (DE 67 at 30).  Furthermore, Edwards was not ultimately involved in the decision to fire the Plaintiff.  Accordingly, Neuville's comments to Edwards do not raise any inference that the Plaintiff was fired because of her husband's disability.

The Plaintiff also argues that the events leading up to her termination were "suspicious" because Yahne became her manager in February 2006 and, by June 2006, had already contacted the Human Resources Manager about eliminating the Plaintiff's position.  The Plaintiff also asserts that the timing of the two warnings issued to her is suspicious because they occurred during the middle of a "huge University of Kentucky sale."  There is nothing in this timing, however, that indicates that Yahne was motivated by the Plaintiff's husband's disability. Further, Yahne has set forth the events that prompted him to issue the warnings.

The Plaintiff has pointed to no evidence in the record that she was terminated "under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the employer's decision."  Accordingly, the Plaintiff's disability association claim must also be dismissed.

**5)    Associational Discrimination under the KCRA.**

The Plaintiff also asserts a claim for disability association discrimination under the Kentucky

19

Civil Rights Act, KRS 344.040. However, the KCRA does not contain an association provision like that contained in the ADA. In *Smith v. Hinkle Mfg. Inc.*, 36 Fed. Appx. 825 (6th Cir. 2002), the Sixth Circuit rejected the Plaintiff's claim for disability association discrimination claim under Ohio's anti-discrimination statute because it contained no prohibition against associational discrimination like that contained in the ADA. *Id.* at 830-31. The court recognized that Ohio courts look to federal law for guidance in disability discrimination cases, but "only insofar as the ADA is 'similar' to the Ohio law." *Id.* The same analysis applies with regard to the Kentucky statute and, thus, the Plaintiff's claim for associational discrimination under the KCRA must be dismissed.

      **B.    FMLA Claim.**

As to her claim that the Defendant violated the FMLA, in her Complaint, the Plaintiff asserts that immediately prior to her termination, she contacted the Defendant's Human Resources Department "who advised her she could consider taking leave to care for her husband." She asserts that she was terminated prior to receiving written information from the Defendant about procedures for taking leave.

In her response to the Defendant's Motion for Summary Judgment, the Plaintiff asserts that, knowing that the Plaintiff was "contemplating his suggestion" that she take FMLA leave, Human Resources Director Larry Morrison allowed Yahne to terminate her the next morning. The Plaintiff asserts that the Defendant "wrongfully interfered" with her right to FMLA leave. (DE 54 at 44).

The "interference" provision of the FMLA makes it unlawful from an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To make out a claim under this provision, the Plaintiff must show that (1) she is an eligible employee; (2) the defendant is an employer as defined under the

statute; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employee was improperly denied benefits to which she was entitled.  *See Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

The Plaintiff never gave notice of her intention to take leave.  Accordingly, the Plaintiff's FMLA claim will be dismissed.

### C.    Retaliation Claim.

In her Complaint the Plaintiff alleges that, "under the statutes cited above [in her Complaint], Mrs. Burus engaged in a protected activity when she reported to management the statements by Eric Neuville about her husband who was disabled.  Subsequently, Eric Neuville engaged in adverse actions toward Mrs. Burus."  She further alleges in her Complaint that, after reporting to Human Resources the conduct of her immediate supervisor and upper management, she was terminated by her immediate supervisor.

Because the Plaintiff alleges that the retaliation occurred in reaction to her reporting comments by Neuville about her disabled husband, the Court presumes that the Plaintiff's retaliation claim is asserted under the ADA.

The ADA prohibits an employer from discriminating against an employee because the employee has opposed any act or practice made unlawful under the ADA.42 U.S.C. § 12203(a).  To present a prima facie case of retaliation under the ADA, the Plaintiff must demonstrate that 1) she was engaged in a protected activity; 2) the exercise of her civil right was known to the Defendant; 3) an adverse employment action or severe or pervasive retaliatory harassment; and 4) a causal link between the protected activity and the adverse employment action. *Johnson*, 344 Fed. Appx. at 113.

As to whether the Plaintiff was engaged in a protected activity, in her response to the

Defendant's motion for summary judgment, the Plaintiff states that she "let others in the company know that she was upset about Mr. Neuville's regular reference to her husband's condition, including her new boss, Mr. Stutler, after he came to Wellpoint in May 2005." In her deposition, the Plaintiff states that the Defendant retaliated against her for telling Stutler that Neuville was "constantly asking about [her] husband." She also testified that she was retaliated against for "voicing [her] disagreement with the write-ups" issued by Yahne.

However, Neuville's mere inquiries regarding the Plaintiff's husband's condition and Yahne's verbal and written warnings are not unlawful acts under the ADA. Thus, the Plaintiff's opposition to those acts is not "protected activity."

For this reason, the Plaintiff's retaliation claim must be dismissed.

### D.     State Law Claims.

In her response to the Defendant's Motion for Summary Judgment, the Plaintiff does not respond to the Defendants argument that the breach of contract claim must be dismissed because there was no contract between the Plaintiff and the Defendant. Accordingly, this claim will be dismissed.

As to her claim for intentional infliction of emotional distress, liability under such a claim "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990). Termination from employment, even if for discriminatory reasons, is insufficient to constitute outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. *Benningfield v. Pettit Environmental Inc.*, 183 S.W.3d 567, 572 (Ky.App.2005). Further,

22

the Plaintiff has not showed that she suffered "severe emotional distress." Accordingly, this claim will also be dismissed.

As for the Plaintiff's wrongful discharge claim, the Court has determined that the Plaintiff's claim that she was fired because of her age, her gender, her husband's disability, and because she engaged in protected activity fail. Accordingly, the wrongful discharge claim which is based on the same assertions must also be dismissed.

### III. CONCLUSION.

For all these reasons, the Court hereby ORDERS as follows:

1)    The Defendant's Motion for Summary Judgment (DE 51) is GRANTED;

2)    Each of the Plaintiffs' claims is DISMISSED;

3)    The Defendant's Motion to Strike Certain Evidence (DE 59) and Motion to Strike Plaintiff's Contradictory and Unsupported "Fact" Statements Contained in Plaintiff's Response to Defendant's Motion for Summary Judgment (DE 60) are DENIED as moot; and

4)    This action is STRICKEN from the active docket of this Court.

Dated this 25th day of March, 2010.



Signed By:

*Karen K. Caldwell*

**United States District Judge**

23